1 | Michael J. Harris (SBN 031489)
2 | SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
3 | Scottsdale, AZ 85251-3693
Telephone: 480.425.2600
4 | Harris@sackstierney.com

*Attorney for Defendants James Houston Boone,*
5 | *Russell Thomas Forney, Ben Stewart Berry, Lafe*
*Kunkel, Frank Rizzi and Andrew Erickson*

6

7 | **IN THE UNITED STATES DISTRICT COURT**

8 | **FOR THE DISTRICT OF ARIZONA**

9

10 | JONATHAN WESLEY BIRDT,            Case No. 3:25-cv-08164-ASB

          Plaintiff,
11

12 | v.                                **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FRCP 12(b)(2)**

JAMES HOUSTON BOONE; THE
13 | UNITED STATES PRACTICAL
SHOOTING ASSOCIATION/IPSC;
14 | RUSSELL THOMAS FORTNEY; BEN      (Assigned to the Hon. Alison S. Bachus)
STEWART BERRY; LAFE KUNKEL;
15 | FRANK RIZZI, ANDREW R.           [Oral argument requested]
ERICKSON,
16
          Defendants.
17

18 |        The Individual Defendants[1] hereby submit their Reply in Support of their Motion to

19 | Dismiss for Lack of Personal Jurisdiction Pursuant to FRCP 12(b)(2). Plaintiff failed to meet

20 | his burden to demonstrate that this Court has personal jurisdiction over the Individual

21 | Defendants. That is unsurprising, as the sole connection between this action and Arizona is

22 | that Plaintiff resides in Arizona, which is woefully insufficient to establish personal

23 | jurisdiction over the non-resident Individual Defendants. As such, the Court must dismiss

24 | the claims against the Individual Defendants.

25

26

27 | _____
[1] Capitalized terms not defined herein shall have the same meaning as defined in the
28 | Individual Defendants' Motion to Dismiss [Dkt 26], filed September 2, 2025.

4220365

## I.    Introduction.

Plaintiff does not dispute that this action relates to his removal from the Organization, a Delaware entity with 40,000 members throughout the United States. Plaintiff's removal was effectuated at the Special Meeting in Delaware, and was voted on by the Individual Defendants—in their capacity as directors—either in person in Delaware or in their home states outside of Arizona. None of the attendees at the Special Meeting were from Arizona. To provide notice to its 40,000 members of the removal, the Organization posted a notice on its website and sent emails to its 40,000 members throughout the country. On its face, this action has nothing to do with Arizona, as none of the alleged conduct occurred in, nor were any alleged defamatory statements targeted to, Arizona.

Indeed, the sole connection between this action and Arizona is the fact that Plaintiff happens to reside in Arizona. An Arizona district court has already ruled on this exact issue and held that a party making allegedly defamatory statements with the knowledge that a plaintiff resides in Arizona is insufficient to establish personal jurisdiction over a non-resident in Arizona. *Xcentric Ventures, LLC v. Bird*, 683 F.Supp.2d 1068, 1075 (D. Ariz. 2010). On that basis alone, the Individual Defendants must be dismissed for lack of personal jurisdiction.

Plaintiff attempts to avoid dismissal by arguing that the fact that a small subset of the Organization's 40,000 members resides in Arizona and presumably received the general notices from the Organization confers jurisdiction in Arizona. Again, that argument is contrary to well-established case law, which requires Plaintiff to demonstrate that the Individual Defendants "expressly aimed" the alleged defamatory statements at Arizona, rather than simply having incidental contacts with Arizona. *Id.* at 1072. Plaintiff himself repeatedly concedes that the communications were not aimed at Arizona, and were instead made nationwide:

1. "Defendants…emailed 40,000 members **across the Country**…and then posted them on a webpage available **across the Country**…" Opposition, p. 1:19-20 (emphasis added).

4220365

2. "…Defendants…shared the statements **with all 50 states**…" Opposition, p. 2:5-6 (emphasis added).

3. The alleged statements were "emailed and posted on The organization website in Prescott, Arizona **and throughout the country to the 40,000 Members** of the Organization. Defendants also sent direct emails to Members in Prescott, Arizona and **throughout the country**…" Opposition, p. 2:14-16 (quoting Paragraph 5 of the Complaint) (emphasis added).

4. "Defendant [sic] specifically targeted and directed their conduct to Arizona **and 49 other states**…" Opposition, p. 4:18-19.

By his own admission, none of the alleged communications were targeted to Arizona, and were instead made as part of a nationwide notice to the Organization's general membership. That admission is fatal to Plaintiff's attempt to establish personal jurisdiction in Arizona.

**II.    Plaintiff has failed to meet his burden to establish personal jurisdiction in Arizona.**

Following the filing of the Individual Defendants' Motion to Dismiss, the burden shifted to Plaintiff to prove that Arizona has personal jurisdiction over the non-resident Individual Defendants. *See e.g. Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). To meet his burden, Plaintiff was required to present evidence beyond the bare allegations of his Complaint. *See e.g. In re Consolidated Zicam Product Liability Cases*, 212 Ariz. 85, 89-90 (App. 2006). Indeed, the allegations in Plaintiffs' Complaint are insufficient to establish personal jurisdiction after being controverted by the sworn declarations of the Individual Defendants. *Chem Lab Prods., Inc. v. Stepanek*, 554 F.2d 371, 372 (9th Cir. 1977) (emphasis added) (citing *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967)).

Despite being required to do so, Plaintiff presented __no evidence__ demonstrating that personal jurisdiction in this Court is proper. Indeed, Plaintiff's Opposition does not include a single exhibit. Instead, Plaintiff solely cited to the unsworn allegations in a single paragraph of the Complaint:

This statement by defense counsel is somewhat bizarre given that Paragraph 5

4220365

of the complaint specifically alleges the direct and local statements made by the Defendants:

> The Directors, through their voluntary employment with The Organization acted in concert knowing that their materially false statements would be **emailed and posted on The organization website** in Prescott, Arizona and **throughout the country to the 40,000 Members of the Organization**. Defendants also sent direct emails to Members in Prescott Arizona and throughout the Country knowing those false statements would cause harm to Plaintiff. Or the fact that they directly communicated with Plaintiff's club in Prescott, Arizona confirming that he was prohibited from participating in the sport because of their actions. The Complaint and facts are clear that Defendants made defamatory statements to thousands of members in the State of Arizona and directly to Plaintiff's home club.

Opposition to Motion to Dismiss [Dkt 28], filed September 2, 2025, p. 2:10-20 (emphasis added). **By failing to provide evidence beyond the allegations in the Complaint, Plaintiff has failed to meet his burden of establishing personal jurisdiction, and this Court must dismiss this action as to the Individual Defendants on that basis alone**. *Maloof*, 113 Ariz. at 487, 557 P.2d at 524; *Beverage v. Pullman & Comley*, LLC, 232 Ariz. 414, 417, 306 P.3d 71, 74 (App. 2013), *aff'd as modified*, 234 Ariz. 1, 316 P.3d 590 (2014).

As set forth below, even assuming *arguendo* that Plaintiff could rely solely on Paragraph 5 of the Complaint—and he cannot—the allegations therein are insufficient to establish personal jurisdiction in Arizona.

### A. The Organization "making public web postings" does not establish personal jurisdiction in Arizona.

As set forth in the Individual Defendants' Motion to Dismiss, a posting on the Organization's website, even when coupled with knowledge that Plaintiff resides in Arizona, is insufficient to establish personal jurisdiction in Arizona:

> As in these cases, the Plaintiffs in this case have alleged no connection between the allegedly defamatory article and the forum other than that the article was about Plaintiffs and Defendants knew Plaintiffs resided in Arizona. In accord with these cases, this Court finds that Plaintiffs have not met their burden under the second prong of the *Calder* "effects test" of showing Defendants expressly aimed the allegedly defamatory article at Arizona.

> Because Plaintiffs have thus not met their burden of establishing that Defendants purposefully directed their allegedly defamatory article at Arizona

4

(or purposefully availed themselves of the forum), this Court lacks specific personal jurisdiction over Defendants.

*Xcentric Ventures, LLC v. Bird*, 683 F.Supp.2d 1068, 1071, 1075 (D. Ariz. 2010). As such, the Court should disregard any discussion of a post on the Organization's website as wholly insufficient to establish personal jurisdiction. *See id.*

### B. The Organization sending emails "throughout the country to the 40,000 Members of the Organization" does not establish personal jurisdiction in Arizona.

For all of the reasons set forth in their Motion to Dismiss, the Organization sending emails to its members "throughout the country" is not sufficient to establish personal jurisdiction.[2] Indeed, to establish personal jurisdiction, **"[t]he defendant also must have 'expressly aimed' the intentional tort at the forum state**, with the knowledge that the resulting harm is likely to be suffered in that state." *Bird*, 683 F.Supp.2d at 1072 (emphasis added). Because the Individual Defendants did not purposefully direct any activities to Arizona, they are not subject to personal jurisdiction in Arizona. *See id.*; *See also* Exhibits A-F to Motion to Dismiss, ¶¶ 13-20. The fact that a small subset of the Organization's 40,000 members happen to reside in Arizona and received the general notice from the Organization does not constitute the express aiming required to establish personal jurisdiction. *See id.*

### C. The case law cited by Plaintiff is distinguishable.

In his Opposition, Plaintiff cites to *Skurla* in an effort to subject the non-resident Individual Defendants to personal jurisdiction in Arizona. *Burri Law PA v. Skurla*, 35 F.4th 1207 (9th Cir. 2022). However, the facts in *Skurla* are entirely distinguishable, and the general notices sent nationwide to the Organization's 40,000 members are nothing like those communications in *Skurla*, which the *Skurla* court found were purposefully targeted to Arizona and made in an effort to interfere with an Arizona contract. *See id.*

The plaintiff in *Skurla* was Burri, a lawyer that resided in Florida. *Id.* at 1210. Burri

---

[2] Plaintiff misleadingly alleges "direct emails to Members in Prescott, Arizona", but in context it is clear that Plaintiff is simply referring to a small portion of those emails sent "throughout the country to the 40,000 Members of the Organization."

4220365

was retained by the Phoenix Eparchy—located in Phoenix, AZ—to investigate its benefits plan, which was administrated by the defendant Skurla. *Id.* "Those tasks required Burri regularly to direct communications toward Arizona, meet with his clients in Arizona, and perform work in Arizona." *Id.* After Burri discovered unlawful irregularities in the plan, "the Phoenix Eparchy, represented by Burri, filed an ERISA action against the Plan in the District of Arizona," to which they later added Skurla personally as a defendant. *Id.* In retaliation, Skurla sent communications to Phoenix Eparchy in Arizona in which he: (1) sought to induce Phoenix Eparchy to terminate its contract with Burri; (2) stated "that Burri was 'greedy incompetent, and inexperienced'"; and (3) alleged that Burri "sought to 'make a name for himself' through a lawsuit that 'had absolutely no legal merit.'" *Id.* at 1210-1211. Skurla repeated similar statements at an in-person meeting with the Arizona representatives of Phoenix Eparchy. *Id.* at 1211. When the foregoing communications did not succeed in their objective of getting Burri fired, Skurla made similar communications to a representative of the Pope, after which "the Pope issued an order requiring the Phoenix Eparchy to withdraw the ERISA action and terminate its relationship with Burri." *Id.*

Burri subsequently brought a claim against Skurla for defamation in the District of Arizona, and Skurla filed a motion to dismiss for lack of personal jurisdiction. *Id.* While the district court granted the motion to dismiss, the 9th Circuit Court of Appeals overturned after it found that "Skurla directed communications toward Arizona that were defamatory and were designed to interfere with an Arizona lawsuit and an Arizona contract." *Id.* at 1213 and 1215. In addition, Skurla's "allegedly defamatory communications—including phone calls and written correspondence—were sent to Arizona, circulated within Arizona, and had an Arizona 'focus,' as they concerned Burri's activities in Arizona. Skurla's actions were therefore aimed at the forum state itself." *Id.* at 1214-1215. In short, the Court found that Skurla targeted Arizona and was therefore subject to jurisdiction in Arizona because:

> Skurla communicated the statements at issue, allegedly, "**for the very purpose of having their consequences felt in the forum state**." The alleged purpose of the statements was to convince the Phoenix Eparchy both to terminate its Arizona employment contract with Burri and to drop the Arizona ERISA

4220365

1    action.

2    *Id.* at 1215 (emphasis added).

3    In the case at bar, the Individual Defendants did not direct communications to Arizona

4    seeking to harm Plaintiff, nor did they make statements for the purpose of having their

5    consequences felt in Arizona. Exhibits A-F to Motion to Dismiss, ¶¶ 13-20. Instead, the

6    Individual Defendants—in their capacity as directors for the Organization—participated in

7    the Special Meeting in Delaware, at which it was voted to terminate Plaintiff's membership

8    with the Organization (a Delaware entity). *Id.* Neither Plaintiff nor anyone else from Arizona

9    was present at the Special Meeting. *Id.* Following the meeting, the Organization posted a

10   notice on its website and sent an email to its 40,000 members "throughout the country"

11   providing notice of the results of the meeting, *i.e.*, that Plaintiff's membership in the

12   Organization was terminated. *Id.* Because the Organization has members in Arizona, a small

13   and insignificant portion of those emails went to Arizona. *See id.* However, unlike *Skurla*,

14   they were not issued "for the very purpose of having their consequences felt in [Arizona]" or

15   to cause Plaintiff any harm in Arizona. *See id.* They were issued as part of the Organization's

16   general notification to its 40,000 members nationwide, and any contact with Arizona was

17   purely incidental. *See id.*

18   Presumably recognizing that those general emails sent nationwide are insufficient,

19   Plaintiff attempts to create a new legal standard out of whole cloth and argues that the

20   Defendants' "conduct had the most profound effect in Arizona." Opposition, p. 4:19.

21   Notably, that statement does not include any citation to legal authority. Indeed, undersigned

22   is not aware of any "profound effect" test. To the contrary, the test is whether "[t]he

23   defendant…'expressly aimed' the intentional tort at the forum state, with the knowledge that

24   the resulting harm is likely to be suffered in that state." *Bird*, 683 F.Supp.2d at 1072. As the

25   Plaintiff concedes, the Organization's emails were sent throughout the country, "to Arizona

26   **and 49 other states**." Opposition, p. 4:18-19 (emphasis added). The Organization sending

27   an email to all 50 states regarding the outcome of a meeting held in Delaware—a meeting at

28   which none of the attendees were from Arizona—regarding the internal governance of a

4220365

Delaware entity clearly and on its face does not constitute the requisite "express aiming" at Arizona to establish personal jurisdiction in Arizona.

Based on the foregoing, Plaintiff's reliance on *Skurla* is misplaced, and this Court does not have personal jurisdiction over the Individual Defendants.

**D.    The new allegations improperly brought in the Opposition are insufficient to establish personal jurisdiction in Arizona.**

In his Opposition, Plaintiff makes a last desperate attempt to manufacture grounds for personal jurisdiction in Arizona by attempting to add new allegations that: (1) he is now precluded from competing in the Organization's shooting events in Arizona; and (2) the Organization's president Mr. Boone—one of the Individual Defendants—sent emails to Arizona members regarding a recall petition of Plaintiff. Plaintiff's last-ditch attempt fails both procedurally and on the merits.

Procedurally, Plaintiff cannot add new allegations in his Opposition to the Motion to Dismiss. And even if he could, Plaintiff has the burden to present evidence beyond the mere allegations of the Complaint (or amended complaint) to establish personal jurisdiction. *See e.g. In re Consolidated Zicam Product Liability Cases*, 212 Ariz. 85, 89-90 (App. 2006). Plaintiff making passing references to unsworn allegations he could assert in an amended complaint is woefully insufficient to meet his burden. *See id.* He was required to present actual evidence beyond those allegations, and his failure to do so is fatal to his jurisdiction argument. *See id.*

On the merits, any amendment to the Complaint would be futile, as those new "allegations" are insufficient to establish personal jurisdiction. Indeed, there is no evidence that the Individual Defendants made any communications with the express purpose of preventing Plaintiff from participating in shooting events in Arizona. To the contrary, the evidence demonstrates that the purpose of the Special Meeting was to remove Plaintiff as a director of the Organization, and that the subsequent postings and emails were to provide notice to the Organization's nationwide membership of that removal. *See* Exhibits A-F to Motion to Dismiss, ¶¶ 13-20. Those nationwide notices were not "expressly aimed" at Arizona, and are therefore insufficient to establish personal jurisdiction. *Bird*, 683 F.Supp.2d

8

4220365

at 1072. The fact that Plaintiff might be prevented from participating in shooting events is solely a result of Plaintiff happening to reside in Arizona, and the Court in *Bird* has already rejected the argument that a defendant publishing an allegedly defamatory statement with knowledge of a plaintiff's residence is insufficient to establish personal jurisdiction in the state in which a plaintiff resides. *Id.* at 1075. In short, the Plaintiff allegedly being precluded from participating in the Organization's events in Arizona following his removal has no bearing on whether this Court has personal jurisdiction over the Individual Defendants.

Plaintiff's allegation that Mr. Boone sent messages "citing again the defamatory statements" is similarly insufficient to establish personal jurisdiction in Arizona. *See* Opposition, p. 3:1-3. Curiously, despite being required to do so, Plaintiff failed to provide the Court with evidence of those alleged messages.[3] Once again, that failure to meet his burden and provide evidence supporting his allegations is fatal. *See e.g. In re Consolidated Zicam Product Liability Cases*, 212 Ariz. 85, 89-90 (App. 2006). Moreover, Plaintiff has failed to allege that these messages themselves were defamatory, or even related to this action. Instead, Plaintiff merely alleges that the messages **cite** the alleged defamatory statements, not that those statements were themselves defamatory. Opposition, p. 3:1-3. As such, it appears that these messages were not allegedly defamatory, have nothing to do with Plaintiff's claims, and are instead being referenced solely in an attempt to manufacture jurisdiction in Arizona.

**III.    It is unreasonable to subject the non-resident individual defendants to jurisdiction in Arizona.**

Even in the unlikely event that the Court agreed that the Organization posting a notice on its website and communicating with its 40,000 members throughout all 50 states constituted a purposeful direction at Arizona, this Court exercising personal jurisdiction over the Individual Defendants would remain unreasonable. The limits on personal jurisdiction "principally protect the liberty of the nonresident defendant—not the convenience of

---

[3] Plaintiff cannot feign ignorance of his burden to provide that evidence with his Opposition, as he was advised of the same in the Individual Defendants' Motion to Dismiss.

4220365

plaintiffs or third parties." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal citations omitted). Indeed, when analyzing personal jurisdiction, "the 'primary concern' is 'the burden of the defendant.'" *Bristol-Myers Squibb Co.*, 582 U.S. at 263 (internal citations omitted).

Courts consider seven factors when assessing the reasonableness of the exercise of personal jurisdiction over a defendant:

> (1) the extent of a defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's home state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interests in convenient and effective relief; and (7) the existence of an alternative forum.

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002) (internal citations omitted). None of the foregoing factors support the exercise of jurisdiction over the Individual Defendants:

1.    The Individual Defendants have done nothing to purposefully interject themselves into Arizona's affairs, and solely participated in a Special Meeting held in Delaware (with some appearing in person and others remotely from their home states). Following that meeting, the Organization posted a notice on its publicly available website and sent emails to its 40,000 members located throughout all 50 states.

2.    None of the Individual Defendants reside in Arizona, and they would be significantly burdened by having to defend themselves as non-residents in a foreign jurisdiction with which they have no connections.

3.     Given the Individual Defendants' complete lack of contacts with Arizona, this Court exercising jurisdiction would constitute a significant conflict with the sovereignty of each of their home states. Indeed, "[o]ne of the goals of minimum contacts analysis is 'to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.'" *Paccar Intern., Inc. v. Commercial Bank of Kuwait, S.A.K.* 757 F.2d 1058, 1065 (9th Cir. 1985) (quoting *World-Wide Volkwagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

4220365

4.      Arizona has no interest in resolving a dispute related to the internal governance of a Delaware entity that arose out of a Special Meeting held in Delaware at which no one from Arizona attended (including Plaintiff himself).

5-7.    "The 'most efficient resolution' factor 'involves a comparison of alternative forums.'" *Glencore Grain Rotterdam B.V.*, 284 F.3d at 1126 (internal citations omitted). The sole factor supporting the exercise of jurisdiction in Arizona is the fact that Plaintiff resides in Arizona. However, as discussed at length *supra*, that factor is insufficient to confer jurisdiction in Arizona, and it is the burden on the Individual Defendants, not the convenience to the Plaintiff, that is of primary concern. *See Bristol-Myers Squibb Co.*, 582 U.S. at 263. Given the existence of alternative forums, including the Individual Defendants' respective states of residence, there is no basis for Arizona to exercise jurisdiction over the non-resident Individual Defendants.

In short, even assuming *arguendo* the Individual Defendants did somehow purposefully avail themselves or otherwise expressly aim statements to Arizona—and they did not—the exercise of jurisdiction over them in Arizona would remain unreasonable, and they must be dismissed.

**IV.    Conclusion.**

Based on the foregoing, the Individual Defendants respectfully request the Court dismiss the claims against them in their entirety pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

DATED this 8th day of September, 2025.

SACKS TIERNEY P.A.

By: /s/ Michael J. Harris
Michael J. Harris
Attorney for Defendants James Houston
Boone, Russell Thomas Forney, Ben Stewart
Berry, Lafe Kunkel, Frank Rizzi and Andrew
Erickson

4220365

1

2

## **CERTIFICATE OF SERVICE**

3    I hereby certify that on the 8th day of September, 2025, I electronically transmitted the

4  attached document to the following CM/ECF registrants:

5    Jonathan Wesley Birdt/Plaintiff: jonbirdt@icloud.com

6    Isaac M. Gabriel:          Gabriel.isaac@dorsey.com

7    Britanny M. Gilbertson:       Gilbertson.brittany@dorsey.com

8

9                    By: */s/ Tessa Joyce*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4220365