## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jonathan W Birdt, | No. CV-25-08164-PCT-ASB |
| Plaintiff, | **ORDER** |
| v. | |
| James Houston Boone, et al., | |
| Defendant. | |

Pending before the Court and ripe for disposition are two Motions to Dismiss the First Amended Complaint: one by Defendants Boone, Fortney, Berry, Kunkel, Rizzi, and Erickson (hereinafter collectively, the "Individual Defendants" or "Director-Defendants") (Doc. 49), and another by Defendant United States Practical Shooting Association (hereinafter "USPSA") (Doc. 50). All Defendants seek to dismiss the First Amended Complaint for lack of personal jurisdiction.[1] (*See* Docs. 49, 50.) Plaintiff opposes the Motions. (Doc. 51.)

All parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 44.)

For the reasons set forth below, Defendant USPSA's Motion to Dismiss will be denied and the Individual Defendants' Motion will be denied in part and granted in part.

---

[1]     Defendants request oral argument. (*See* Docs. 49, 50.) Because the Court is able to resolve the Motions based on the papers, the requests will be denied. *See* Fed.R.Civ.P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) ("[A] district court can decide the issue without oral argument if the parties can submit their papers to the court.").

## I.   BACKGROUND

Plaintiff filed his initial Complaint on August 5, 2025, alleging (1) defamation against all Defendants and (2) breach of fiduciary duty against Director-Defendants. (Doc. 1 at 2-4.)  All Defendants were served and moved to dismiss the Complaint for lack of personal jurisdiction. (Docs. 13, 14, 16-21, 26.)  In an Order dated January 23, 2026, the Court dismissed the Complaint on that basis but granted Plaintiff leave to amend. (Doc. 45.)

Plaintiff filed his First Amended Complaint on January 24, 2026. (Doc. 46.)  In the First Amended Complaint, Plaintiff alleges the following facts:  Plaintiff is a resident of Arizona who was elected as an Area Director of USPSA in 2024 to represent a region of the country comprised of Arizona, New Mexico, Colorado, California, and Hawaii.[2] (Doc. 46 at 1-2, 4.)  Director-Defendants voted to remove Plaintiff as both Area Director and member of USPSA in 2025. (*Id.* at 1.)  All Defendants are residents of different states, and Defendant Boone was interim president of USPSA at relevant times. (*Id.* at 2.)  Defendants acted with each other's consent and on behalf of each other. (*Id.*)  On March 18, 2025, Director-Defendants convened a board meeting, the purpose of which was to remove Plaintiff as a director and member of the organization. (*Id.*)  At the meeting, Director-Defendants made various false and defamatory statements about Plaintiff (hereinafter, "the Meeting Statements"). (*Id.* at 2-3.)  Following the meeting, Defendants launched a recall election directed at association members in Plaintiff's geographic "area" as defined above; USPSA members living in the "area" received emails about Plaintiff containing the Meeting Statements and urging them to vote to recall Plaintiff. (*Id.* at 3.)  Plaintiff's local (Arizona) shooting club was warned in an email that it could be sanctioned if it allowed Plaintiff to participate in its matches. (*Id.* at 3-4.)

Plaintiff lists two causes of action in the First Amended Complaint (hereinafter, "FAC"):  (1) defamation as to all Defendants and (2) breach of fiduciary duty against

---

[2]    In the instant Motions, that geographic area is defined as Area 2, and Plaintiff did not contest that characterization. (*See* Docs. 49-51.)  The Court will therefore refer to that geographic area as "Area 2" in this Order.

Director-Defendants.  (Doc. 46 at 4-5.)  For relief, Plaintiff seeks declaratory relief, "[g]eneral [d]amages in excess of $75,000," punitive damages, restitution, disqualification of Director-Defendants, reinstatement of Plaintiff to USPSA membership, and costs.  (*Id.* at 5-6.)

The instant Motions to Dismiss followed, to which Plaintiff responded, and all Defendants respectively replied.  (Docs. 49-53.)  All Defendants argue the FAC should be dismissed for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.  (Docs. 49, 50.)

## II.    ANALYSIS

As noted *supra*, this is not the first time this Court has analyzed personal jurisdiction in this case.  The relevant case law governing personal jurisdiction, which was summarized in the Court's previous Order (*see* Doc. 45), is partially repeated (and supplemented) here to provide the framework for the Court's analysis of the instant Motions.

### A.    Relevant Law

When faced with a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of establishing that jurisdiction is proper" but "need only make a prima facie showing of jurisdictional facts[.]" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citations omitted). In determining whether a plaintiff has established a prima facie case for personal jurisdiction over a defendant, the complaint's "uncontroverted allegations" are accepted as true. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)).  But when personal jurisdiction is challenged, it is the plaintiff's burden to establish personal jurisdiction.  *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977) (citations omitted).  At that point, a plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Id.* "Conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor." *Am. Tel. & Tel. Co.*, 94 F.3d at 588 (quoting *WNS, Inc.*, 884 F.2d at 203).

"We only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). If a court looks to evidence outside the pleadings and affidavits to resolve the motion, it must convert the motion to dismiss to a Rule 56 motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003) (citations omitted). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss to a motion for summary judgment." *Id.* (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994)). Thus, when considering a 12(b)(2) motion, courts can consider pleadings, affidavits and other documents without converting to a summary judgment motion. *Travelers Cas. & Sur. Co. of America v. Telstar Const. Co., Inc.*, 252 F. Supp. 2d 917, 922 (D. Ariz. 2003) (citations omitted).

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Schwarzenegger,* 374 F.3d at 800 (citations omitted). "The Arizona long-arm statute provides for personal jurisdiction co-extensive with the limits of federal due process." *Doe v. Am. Nat'l Red Cross*, 121 F.3d 1048, 1050 (9th Cir. 1997) (citing *Batton v. Tennessee Farmers Mut. Ins. Co.*, 736 P.2d 2, 4 (Ariz. 1987)); *see* Ariz. R. Civ. P. 4.2(a). Therefore, "the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger,* 374 F.3d at 800-801 (citations omitted).

Due process requires that a defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notices of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotations and citations omitted). There are two ways to establish personal jurisdiction: general jurisdiction and specific jurisdiction. *Ranza*, 793 F.3d at 1068 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). In this case, Plaintiff argues only specific

jurisdiction is present (Docs. 46 at 1, 51 at 2), and there is nothing in the record to demonstrate any defendant is "at home" in Arizona such that general jurisdiction exists. (*See* Doc. 45 at 8-9.) Thus, the Court need only consider whether specific jurisdiction is present.

"Specific jurisdiction exists when a case arises out of or relates to the defendant's contacts with the forum." *Ranza*, 793 F.3d at 1068 (quotations and citations omitted). To assess specific personal jurisdiction, courts use a three-prong test:

1.  the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
2.  the claim must be one which arises out of or relates to the defendant's forum-related activities; and
3.  the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (quotations and citations omitted). If, however, the plaintiff fails to satisfy either of the first two prongs, personal jurisdiction is not established in the forum state. *Schwarzenegger*, 374 F.3d at 802. "The jurisdictional inquiry must decouple defendants, considering whether each individual defendant has had sufficient 'minimum contacts' with the forum state to justify an exercise of jurisdiction over that defendant." *Burri L. PA v. Skurla*, 35 F.4th 1207, 1213 (9th Cir. 2022).

### B.  Prong 1 of Specific Jurisdiction (Purposeful Direction at Forum)

The first prong of the minimum contacts test may be shown in different ways depending on the nature of the claim. In a tort case[3], courts analyze purposeful direction

---

[3]    The two claims in the present case, defamation and breach of fiduciary duty, both arise under tort law in Arizona. *See Rogers v. Mroz,* 502 P.3d 986, 990 (Ariz. 2022) ("Arizona's tort of defamation traces to the common law."); *see B2B CFO Partners, LLC v. Kaufman*, 856 F. Supp. 2d 1084, 1093 (D. Ariz. 2012) ("[B]reach of fiduciary duty is a

under the three-part "effects test" established by *Calder v. Jones*. 465 U.S. 783, 789–90 (1984). The "effects test" requires plaintiffs to establish purposeful direction by showing that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant [knew was] likely to be suffered in the forum state." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162-63 (9th Cir. 2023) (citations omitted). "This analysis is driven by the defendant's contacts with the forum state—not the plaintiff's or other parties' forum connections." *Id.* at 1163 (citations omitted).  Thus, "the minimum contacts analysis examines the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (internal quotation and quotation marks omitted). The Court considers Defendants' respective actions vis-à-vis the *Calder* test.

### 1. USPSA

As to the first prong of the *Calder* test, the Court continues to find the prong is quickly satisfied.  (*See* Doc. 45.)  Sending emails that contained allegedly defamatory statements were intentional acts.  *See Marlyn Nutraceuticals, Inc. v. Improvita Health Prods.*, 663 F. Supp. 2d 841, 850 (D. Ariz. 2009) (finding defendants' emails were intentional acts because they could not "occur spontaneously or because of reflex"); *see also Burri*, 35 F.4th at 1214 ("communicating defamatory acts … would constitute intentional tortious acts").

The second prong of the *Calder* test, express aiming the forum state, remains a primary point of contention.  USPSA argues that "[t]he correspondence described in the Amended Complaint regarding Plaintiff's recall election in Area 2 were emailed to 'active members in the Area,'" and because Area 2 is made up of five states including Arizona, there was no purposeful direction at Arizona.  (*See* Doc. 50 at 6-7) (quoting Doc. 46 at ¶¶ 11-12b).   USPSA attaches to its Motion the emails in question (Doc. 50-1), which the Court may consider without converting the Motion to a summary judgment motion as the

tort under Arizona law.").

emails were referenced in the FAC.  USPSA further argues that Plaintiff has brought forth no facts to support his allegations in the FAC and Plaintiff's reliance on *Burri* is misplaced.

In support of its argument, USPSA points the Court to *Axiom Foods*.  In *Axiom Foods*, the Ninth Circuit found that a newsletter emailed by a United Kingdom-based company to 343 email addresses, 55 of which were for recipients with companies in California (and of those, 10 were actually in California), was not enough to establish specific jurisdiction in California.  874 F.3d at 1068-71. The Ninth Circuit further noted that the foreign company conducted no business in California and observed that California was certainly not the "focal point" of the newsletter or of "the harm suffered."  *Id.* at 1070-71.  The court also found that the conduct in question "barely connected" the foreign company "to California residents, much less California itself." *Id.* at 1071.

Plaintiff again emphasizes the *Burri* case to this Court, arguing that *Burri* establishes specific jurisdiction when defendants specifically target a forum state and seek to have an effect in the forum state.  (*See* Doc. 51.)  Plaintiff contends that his FAC establishes that Defendants' "smear campaign went far beyond general website announcements and instead invaded and targeted every corner of Plaintiff's home state, as intended."  (*Id.* at 2.)

In its previous Order addressing personal jurisdiction, this Court considered relevant case law when analyzing the allegations in Plaintiff's original Complaint.  (*See* Doc. 45 at 10-14.)  At that time, the original Complaint simply alleged that a nationwide email was sent to USPSA members and the Meeting Statements were posted on the USPSA website. (*See id.* at 13 (citing Doc. 1 at 2).)  The Court observed, "[I]t appears that Plaintiff alleges personal jurisdiction over USPSA exists because Plaintiff lives in Arizona and USPSA was aware Plaintiff lived in Arizona when it sent the nationwide email and posted the Meeting Statements on its website." (Doc. 45 at 13.)  The Court distinguished *Burri*, because the *Burri* court had found that the defendant's acts directly concerned plaintiff's activities in Arizona and interfered with an Arizona lawsuit and an Arizona contract.  (*Id.*)  In *Burri*, the alleged defamatory statements were directed to Arizona, circulated within Arizona, had an Arizona "focus" because "they concerned Burri's activities in Arizona," and "[t]he alleged purpose of the statements was to convince" actors within Arizona to act in a certain

way.  35 F.4th at 1214-15.  Therefore, based on the facts alleged in the Complaint at the time of the Court's previous Order, *Burri* did not seem applicable.

Now, the Court considers the case law with the Amended Complaint before it.  In his Amended Complaint, Plaintiff alleges that Defendants launched a recall election directed at USPSA members in the states comprising Area 2, which includes Arizona.  (Doc. 46 at 3.)  Plaintiff further alleges that USPSA sent "targeted" emails about Plaintiff containing the Meeting Statements and urging them to vote to recall Plaintiff "to only active members in the Area, primarily Arizona."  (*Id.*)  Plaintiff also alleges that USPSA sent emails to Plaintiff's local (Arizona) shooting club, warning the club that it could be sanctioned if it allowed Plaintiff to participate in its matches.  (*Id.* at 3-4.)  Copies of the emails were attached to USPSA's Response to the instant Motion to Dismiss.  (Doc. 50-1.)  On April 17, 2025, USPSA sent emails to Area 2 members, with the subject line "Area 2 Special Election – Your Voice is vital to USPSA's Future."  (*Id.* at 7.)  The email contains language specific to Area 2, including:

- "A special election is now underway in Area 2 to determine whether Jon Birdt should be removed as your Area Director."
- "We urge every eligible member in Area 2 to vote YES in support of his removal."
- "This special election … follows a petition by members of your own Area 2 community…"

(*Id.*)

On April 19, 2025, USPSA sent a second email to Area 2 members that was signed by Defendant Boone.  (Doc. 50-1 at 11-12.)  It was addressed to "Area 2 members" and asked them to vote to remove Plaintiff as Area 2 Director and share the message "with fellow Area 2 members."  (*Id.*)  Defendant Boone further responded to messages sent by a shooting range in Prescott, Arizona, in which the range inquired about Plaintiff's eligibility to compete at certain events at that range.  (*Id.* at 2-5.)  Defendant Boone explained that Plaintiff's membership was revoked and Plaintiff had been "banned from competing at USPSA-sanctioned events."  (*Id.* at 3, 5.)

USPSA argues that "rather than Arizona itself, the Amended Complaint claims that USPSA's communications were directed to USPSA members across five states, who were all equally Plaintiff's constituents." (Doc. 50 at 6.) Thus, USPSA contends, Arizona was not expressly invoked or mentioned in those emails. (*See id.* at 7.) However, it is undisputed that the emails were only sent to Area 2, and indeed, the emails were only sent to Area 2 specifically because Area 2 includes Arizona. Thus, it was unnecessary to mention "Arizona" by name because, under USPSA's governance structure, Area 2 means Arizona (and four other states). And although four other states join Arizona in Area 2, the Court does not agree with USPSA that this frustrates specific jurisdiction. Plaintiff lives in Arizona, and his assigned Area included Arizona. In his role as Director for Area 2, Plaintiff represented USPSA members who reside in Arizona. Had Plaintiff not been in Arizona and his Area constituency not included Arizona, the emails would not have been directed at Arizona. Thus, as alleged in the Amended Complaint (and as indicated further in the record before the Court), like in *Burri*, there was a focus on Arizona. The emails concerned Plaintiff's activities in Arizona, and the alleged purpose of the emails was to convince Arizona and fellow Area 2 members of USPSA to vote to recall Plaintiff.

As noted *supra*, USPSA cites the Court to *Axiom Foods*, but the Court finds it easily distinguished on the record now before it. In *Axiom Foods*, the Ninth Circuit highlighted the small number of intended recipients of the communications in the forum state and how the forum state was not the "focal point" of the communication and the alleged harm suffered. *See* 874 F.3d at 1070-71. By contrast, the communications in question in this case were specifically sent to Arizona members of USPSA, along with the other Area 2 states. Arizona was certainly targeted by the communications, because Plaintiff resides in Arizona and represented Arizona constituents of the association. As alleged, the purpose of the emails was to have an effect in Arizona. The Court concludes the second prong of the *Calder* test is met as to USPSA.

Finally, the third prong of the *Calder* test is met because USPSA knew harm was likely to be suffered in the forum state. Arizona was a focal point of the alleged harm suffered. Plaintiff was removed as Area 2 Director, which includes Arizona, at the urging

of emails directed at Arizona and those other Area 2 states.  That harm alone would satisfy this prong.  In addition, Plaintiff was banned from participating in Arizona-based events of USPSA and Defendant USPSA confirmed that by emails sent to an Arizona shooting range. (*See* Doc. 49 at 39-42.)

Because the *Calder* test is met as to USPSA, the Court considers (after first analyzing *Calder* regarding the remaining Defendants) the second prong of specific jurisdiction as to USPSA below.

### 2.  Defendant Boone

In the Amended Complaint, Plaintiff refers to the individually-named Defendants in the collective, with few exceptions.  (*See* Doc. 46.)  That is, Plaintiff lists them individually with respect to the states where they respectively reside, and he points to specific actions taken by Defendant Boone in particular.  (*See id.*)  Moreover, Plaintiff broadly alleges that all of the individually-named Defendants, at all times, acted "with the express consent and on behalf of each other Defendant."  (*Id.*)  In their Motion to Dismiss, the individually-named Defendants collectively argue that there is no personal jurisdiction as to them, and they alternatively argue that Defendant Boone's actions cannot be imputed to the other individually-named Defendants.  (*See* Doc. 49.)  Because Defendant Boone is treated somewhat differently from the other individually-named Defendants those respects, the Court analyzes personal jurisdiction for Defendant Boone separately from the other (otherwise similarly situated) individually-named Defendants.

It is undisputed that Defendant Boone is not a resident of Arizona.  Initially in his joint motion with his fellow, individually-named Defendants, Defendant Boone argues the Amended Complaint is directed at USPSA, rather than him or the other individually-named Defendants.  (Doc. 49 at 9.)  He further points the Court to his sworn declaration, in which he avowed any action(s) he took was in his capacity as a USPSA board member and not in his individual capacity.  (*Id.* at 9, 17-18.)  Defendant Boone does not further expound on this argument that he would not be subject to personal jurisdiction in this Court because he was acting in his capacity as a board member, rather than his personal capacity.  (*See* Doc. 49.)  Rather, he focuses his argument on the prongs of personal jurisdiction and contends

Plaintiff has not met his burden to establish personal jurisdiction. (*See id.*) Before turning to the latter, the Court considers the issue of Defendant Boone's personal capacity versus his capacity as a board member/officer of USPSA.

In making his argument that the Court lacks personal jurisdiction against him because he was acting in his capacity as an officer or director of USPSA, Defendant Boone does not cite a single case in support. (*See* Docs. 49, 53.) Although he does not expressly invoke the doctrine, it appears Defendant Boone may be basing this position on the "fiduciary shield doctrine." "Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989). "Restated, jurisdiction over individual officers . . . of a corporation may not be predicated on the court's jurisdiction over the corporation itself." *Brink v. First Credit Res.*, 57 F. Supp. 2d 848, 859 (D. Ariz. 2001) (internal citation omitted).[4] Even assuming *arguendo* that the doctrine may apply in this case, "the corporate form may be ignored in cases in which the corporation is the agent or alter ego of the individual defendant." *Davis*, 885 F.2d at 520. Indeed, under Arizona's long-arm statute, personal jurisdiction may be asserted over individual officers "consistent with constitutional due process . . . as long as the court finds those officers have sufficient minimum contacts with Arizona." *Id.* at 522 (citing *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22-23 (2d Cir. 1988)). Thus, Arizona's long-arm statute "is not equitably limited by the fiduciary shield doctrine" and "the reach of long-arm jurisdiction in Arizona is effectively stretched by the reasoning of *Calder*." *Id.* (internal citation omitted). Consequently, "the correct jurisdictional inquiry" is into the contacts Defendant Boone "had with Arizona relative to this dispute" because he is not "necessarily protected from

---

[4] The Court notes that the status of USPSA is somewhat unclear in the record. The Amended Complaint refers to USPSA only as the "Organization" and "a nonprofit and charity operating under Federal 501c" without further defining its structure or status. (*See* Doc. 46 at ¶¶ 3-4, 7, 22.) In its Motion to Dismiss, USPSA indicates it is a "Delaware corporation." (Doc. 50) (citing to Doc. 23, USPSA's Diversity Disclosure Statement). For the purposes of analyzing the instant Motion(s), the Court assumes USPSA is a corporation and therefore the fiduciary shield doctrine could potentially apply.

jurisdiction by a fiduciary shield." *See id.*

Therefore, the Court considers the first prong of specific personal jurisdiction vis-à-vis Defendant Boone and undertakes the *Calder* analysis. First, Defendant Boone authored multiple emails that are at issue in this case. (*See* Doc. 50-1.) Sending email that contains allegedly defamatory statements constitutes an intentional act. *See Marlyn Nutraceuticals, Inc.*, 663 F. Supp. 2d at 850. Although Defendant Boone argues Plaintiff has insufficiently pled that the defamatory statements were made in the emails in question, the argument does not carry the day. Plaintiff characterizes the defamatory statements in his Amended Complaint, and he further alleges the statements were made in the email sent by Defendant Boone. (*See* Doc. 46 at ¶¶ 8-9, 12, 22.) The Court is required to construe the pleading liberally[5], and the email sent by Defendant Boone to Area 2 members, which is before the Court, could be construed to fit the characterizations of the Amended Complaint. (*See* Doc. 50-1 at 11-12.) Defendant Boone sent the email to Area 2 members and that was an intentional act. Thus, the first part of the effects test is met.

Second, Defendant Boone's email was directed to Arizona. As explained *supra*, Arizona was indeed the "focal point" of the email sent by Defendant Boone. Had Plaintiff not resided in Arizona and represented USPSA members in Arizona (and Area 2, which encompasses Arizona), Defendant Boone would not have sent allegedly defamatory email to Area 2 members. Therefore, the fact that the email was sent to members residing in four other states does not frustrate this part of the effects test. Area 2 members received Defendant Boone's email precisely because of Plaintiff's connection to Arizona and Area 2's constituency including Arizona, and in order to have an effect in Arizona.

Third, Defendant Boone knew harm was likely going to be suffered in Arizona, because the message he sent urging Area 2 members to remove Plaintiff from office was meant to affect Arizona's members of USPSA and adversely impact Plaintiff (an Arizona resident). That alone would suffice to satisfy the third prong; in addition, Defendant Boone

---

[5] *Jones v. Cmty. Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) ("The allegations of a pro se complaint, 'however inartfully pleaded,' should be held 'to less stringent standards than formal pleadings drafted by lawyers.'") (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)).

sent emails to an Arizona shooting range confirming Plaintiff should be barred from participating in USPSA-sponsored events at the range.

Because the three-part *Calder* effects test is met, the Court concludes the first prong of the specific personal jurisdiction test as to Defendant Boone is satisfied.

### 3. Defendants Fortney, Berry, Kunkel, Rizzi, and Erickson

The Court next turns to the remaining, individually-named Defendants. In the Amended Complaint, Plaintiff refers to them in the collective and makes no effort to distinguish them from another, with the exception of listing the states where they respectively reside. (*See* Doc. 46.) He also alleges they acted "with the express consent and on behalf of each other Defendant." (*Id.* at ¶ 5.) It is undisputed that Defendants Fortney, Berry, Kunkel, Rizzi, and Erickson are not residents of Arizona. Because each of those Defendants is challenging jurisdiction and have submitted affidavits in support of same (*see* Doc. 49), it is Plaintiff's burden to make a "prima facie showing of jurisdiction facts" to avoid dismissal. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). That is, Plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc.*, 551 F.2d at 787.

Here, Plaintiff has put forward no affidavits or other documents to support his broad, collective assertion in the Amended Complaint that all individually-named Defendants acted "with the express consent and on behalf of each other Defendant." (*See* Doc. 46.) There are no supporting documents attached to the Amended Complaint. (*See id.*) There are no affidavits or other documentation to make the prima facie showing of jurisdictional facts provided in his two paragraph Response to the Motions to Dismiss. (*See* Doc. 51.) Therefore, while the Court would certainly resolve any conflicts in the parties' affidavits in Plaintiff's favor, there are no such conflicts because Plaintiff has come forward with nothing to support the assertion in ¶ 5 of his Amended Complaint about the purported acts of the individually-named Defendants. Because Plaintiff has failed to carry his burden, the Court will dismiss the Amended Complaint as to Defendants Fortney, Berry, Kunkel, Rizzi, and Erickson for lack of personal jurisdiction.

**C.      Prong 2 of Specific Jurisdiction (Conduct Arising out of Defendant's**

Contacts with Forum)

Having found the first prong met as to Defendants USPSA and Boone, the Court next considers the second prong of the minimum contacts test as to each of them. For this prong, Plaintiff must establish that his claims against Defendants USPSA and Boone arise out of or relate to each of those Defendants' forum-related activities. *See Schwarzenegger*, 374 F.3d at 802. The Court "must determine if [Plaintiff] would not have been injured 'but for' the" Defendants' conduct directed toward Plaintiff in Arizona. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). "The 'but for' test preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum" but should not be read restrictively. *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), *overruled on other grounds by Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991); *see also Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1052 n.7 (9th Cir. 1997) ("Although *Shute* has been questioned, the 'but for' test remains viable.").

Liberally construed, Plaintiff has alleged that he was removed from office as USPSA director and banned from competing in USPSA events due to Defendants USPSA and Boone's respective actions. (*See* Doc. 46.) But for the conduct of those two Defendants, Plaintiff would not have suffered the alleged harms. (*See id.*) The Court finds Plaintiff has met his burden as to the second prong as to Defendants USPSA and Boone.

**D.    Prong 3 of Specific Jurisdiction (Whether Personal Jurisdiction is Reasonable)**

Because Plaintiff has succeeded in satisfying the first two prongs as to Defendants USPSA and Boone, the burden now shifts to Defendants USPSA and Boone "to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 476-78). When analyzing reasonableness, courts in the Ninth Circuit consider seven factors: (1) the extent of the purposeful interjection into the forum state, (2) the burden on the defendant of defending in the forum, (3) the extent of conflict with the sovereignty of defendant's state,

(4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065 (9th Cir. 1985) (quoting *Ins. Co. v N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1270 (9th Cir. 1981)). "No one factor is dispositive; a court must balance all seven." *Panavision*, 141 F.3d at 1323 (citation omitted).

The Court will consider all seven factors as to both Defendants USPSA and Boone. As to Defendant USPSA, the Court recognizes the organization has argued that Plaintiff has "conceded" that personal jurisdiction is unreasonable. (Doc. 52 at 7.) However, the burden ultimately lies with Defendant USPSA regarding this prong of the analysis, and the Court will consider whether it has met that burden. The Court notes that while Defendant USPSA analyzed all seven factors in its briefing (*see* Doc. 50 at 7-9 and Doc. 52 at 7-8), Defendant Boone did not mention, much less analyze, the factors in his briefing (*see* Docs. 49, 53). Arguably, he could be determined to have failed to meet his burden on that basis alone. Nonetheless, the Court will consider the factors as to Defendant Boone as best it can on the record before it. *See Brink v. First Credit Res.*, 57 F. Supp. 2d 848, 861 (D. Ariz. 1999) (briefly considering a reasonableness factor where defendant did not discuss any in briefing).

### 1. Purposeful Interjection

As alleged in the Amended Complaint, Defendants USPSA and Boone each transmitted three or fewer offending emails to Arizona. (*See* Doc. 46.) This contact is minimal. However, the Court has already found that both Defendants USPSA and Boone purposefully directed those emails at Arizona. "Actions directed at a forum resident expected to cause harm in the forum constitute purposeful injection." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011) Contacts by email to the forum state may "indicate purposeful injection." *Id.* (citing *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995) ("purposeful injection demonstrated by "mail, faxes, and telephone calls to California ..., [defendant's] newsletter sent to California, [and]

dues collected from California members'"). This Court finds this factor weighs in favor of Plaintiff as to both Defendants USPSA and Boone.

### 2. Burden on Defendants

Here, the record is undisputed that Defendant USPSA is an organization that is based outside of Arizona. Plaintiff alleges Defendant USPSA is a "a nonprofit and charity operating under Federal 501c." (Doc. 46 at ¶ 22.) Defendant USPSA contends it is a Delaware corporation. (Doc. 50) (citing to Doc. 23, USPSA's Diversity Disclosure Statement). As a Delaware corporation, USPSA argues it "would be significantly burdened by defending this action across the country in Arizona." (Doc. 50 at 8, Doc. 52 at 7.) The record is further undisputed that Defendant Boone is a resident of Oregon. (Doc. 46 at ¶ 4, Doc. 49 at 17.)

"[W]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden [of litigation in a forum other than one's residence] is substantially less than in days past." *CollegeSource*, 653 F.3d at 1080 (quoting *Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (brackets in original)). Accordingly, this factor weighs towards both Defendants USPSA and Boone, "but only slightly." *Id.*

### 3. Conflict with Sovereignty of Defendants' States

"This factor concerns the extent to which the district court's exercise of jurisdiction in" Arizona "would conflict with the sovereignty of" the states in which Defendants USPSA and Boone are domiciled. *Panavision*, 141 F.3d at 1323. Those states are Delaware as to USPSA and Oregon as to Boone. "One of the goals of minimum contacts analysis is 'to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.'" *Paccar*, 757 F.2d at 1065 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Defendant USPSA argues this Court would be interfering with Delaware's sovereignty and the right of Delaware courts to resolve disputes involving its corporations. (Doc. 50 at 8, Doc. 52 at 7) (citing *Paccar*, 757 F.2d at 1065). Here, the Court agrees with USPSA that, in large part, this lawsuit is about an internal board dispute of an association

that is incorporated in Delaware. Of course, it goes beyond that with its tortious claim, but it is rooted in that internal dispute. This factor therefore weighs in favor of Defendant USPSA. Defendant Boone, by contrast, has made no such argument and he is not a similarly-situated corporation. The factor is neutral as to Defendant Boone.

### 4. Forum State's Interest in Adjudicating the Dispute

Plaintiff is a resident of Arizona. The forum state has "a strong interest in providing an effective means of redress for its residents [who are] tortiously injured." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993) (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988) (brackets in original); *Brink*, 57 F. Supp. 2d at 861 ("The state of Arizona maintains a strong interest in providing an effective means of redress for its residents.") (citations omitted). This factor weighs in favor of Plaintiff regarding exercising jurisdiction over both Defendants USPSA and Boone.

### 5. Most Efficient Judicial Resolution

"This factor focuses on the location of the evidence and witnesses" and "is no longer weighed heavily given the modern advances in communication and transportation." *Panavision*, 141 F.3d at 1323. USPSA argues "no evidence is alleged to exist exclusively in Arizona regarding the electronic communications at issue" and the association's directors all live outside of Arizona. (Doc. 52 at 8.) Based on the record before the Court, it appears the directors are spread throughout the country, and much of the discovery will be electronic. For example, it appears that the directors met via videoconference platform, and many of the alleged tortious statements occurred via email. On the other hand, some witnesses regarding the alleged torts' impact in Arizona (e.g., shooting range-related personnel) may be in the forum state. The Court finds this factor is neutral as to both Defendants.

### 6. Plaintiff's Interest in Convenient and Effective Relief

"The convenience and effectiveness of relief for the plaintiff comprise the sixth factor." *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 476 (9th Cir. 1995). Nothing in the record before this Court establishes that effective relief would not be available to Plaintiff in alternative forum, such as Delaware, although litigating in that state would undoubtedly

- 17 -

inconvenience Plaintiff.  However, not much weight is given to inconvenience to plaintiffs. *See id.* (citing *Core-Vent*, 11 F.3d at 1490).  Accordingly, "[t]his factor therefore tips only slightly in favor of" Plaintiff vis-à-vis both Defendants.  *Id.*

### 7. Alternative Forum

Under this factor, the Court considers the availability of an alternate forum.  *Ziegler*, 64 F.3d at 476.   "The plaintiff bears the burden of proving the unavailability of an alternative forum." *Core-Vent*, 11 F.3d at 1490.  Because Plaintiff has not demonstrated his claims cannot be litigated in another forum, such as Delaware or Oregon, "this factor goes to defendants." *See Ziegler*, 64 F.3d at 476.

### 8. Balancing the Seven Factors

In summary, as to Defendant USPSA, three factors weigh in favor of jurisdiction (purposeful availment, forum state's interest, and the importance of the forum to Plaintiff), three weigh against jurisdiction (burden on defendant, conflict with another state's sovereignty, and availability of alternative forum), and one (efficient judicial resolution) is neutral.  As to Defendant Boone, the same three factors favor jurisdiction (purposeful availment, forum state's interest, and the importance of the forum to Plaintiff), two disfavor jurisdiction (burden on defendant and availability of alternative forum), and two are neutral (conflict with another state's sovereignty and efficient judicial resolution).   For both Defendants, it is a close call.   However, it is presumed that personal jurisdiction is reasonable because purposeful availment has been shown.  *Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir. 1991) (citations omitted).  Defendants must therefore present a "compelling case" that exercising jurisdiction would be unreasonable.  *Id.* (quoting *Burger King*, 471 U.S. at 477).  So even though Defendants "may be able to show that the exercise of jurisdiction might be unreasonable, [] the closeness of the question manifests that they cannot do so in a compelling fashion." *Id.*  Accordingly, the Court concludes personal jurisdiction as to both Defendants USPSA and Boone exists here.

## III.    CONCLUSION

For the foregoing reasons, Defendant USPSA's Motion to Dismiss will be denied

- 18 -

and the Individual Defendants' Motion to Dismiss will be denied in part (as to Defendant Boone) and granted in part (as to the remaining Individual Defendants – Defendants Fortney, Berry, Kunkel, Rizzi, and Erickson).

**IT IS THEREFORE ORDERED denying in part and granting in part** the Individual Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction Pursuant to FRCP 12(b)(2) (Doc. 49).  The Motion is denied as to Defendant Boone and it is granted as to Defendants Fortney, Berry, Kunkel, Rizzi, and Erickson.

**IT IS FURTHER ORDERED dismissing** Defendants Fortney, Berry, Kunkel, Rizzi, and Erickson from this case.

**IT IS FURTHER ORDERED denying** Defendant USPSA's Motion to Dismiss Plaintiff's First Amended Complaint for Defamation, Breach of Fiduciary Duty and Declaratory Relief (Doc. 50).

**IT IS FURTHER ORDERED** that Defendants USPSA and Boone shall file their respective Answers to the First Amended Complaint within 14 days of the date this Order is filed.

Dated this 30th day of April, 2026.

_____
Honorable Alison S. Bachus
United States Magistrate Judge